## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

*Electronically Filed on November 16, 2023*

| | | |
|---|---|---|
| Collective Edge LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Ferg's Sports Bar & Grill, Inc., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Carlos Lopez, Jr. and Colleen A. Lopez | ) | |
| | ) | |
| *Plaintiffs*, | ) | Consolidated |
| | ) | Case Nos. 20-34, 20-48, and 20-159 |
| v. | ) | |
| | ) | Hon. Armando O. Bonilla |
| United States of America, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MOTION TO VACATE ORDER SCHEDULING TRIAL AND PRE-TRIAL DEADLINES

Pursuant to Rule 7(b) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully moves this Court to vacate the Order scheduling trial to begin on January 22, 2024. *See* Order, ECF No. 132 (Nov. 1, 2023). In accordance with RCFC 7.3(a), the United States has conferred with counsel for Plaintiffs, who oppose this motion.

On November 14, 2023, the Surface Transportation Board ("STB") revoked the Notice of Interim Trail Use ("NITU") underlying the claims in this case. *See* ECF No. 133-1, Exhibit A. The NITU is the "government action that prevents the landowners from possession of their property unencumbered by the easement" and therefore establishes a basis for a landowners' Takings Claim pursuant to the Fifth Amendment of the Constitution. *Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010); *see also Caldwell v. United States*, 391 F.3d 1226, 1233-34

(Fed. Cir. 2004) ("The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interest in the right-of-way.").

After a NITU is issued, there are several possible outcomes for subsequent takings claims: the issuance of a NITU could give rise to a permanent taking or a temporary taking. *See Caldwell,* 391 F.3d at 1234 ("Thus, the NITU operates as a single trigger to several possible outcomes."); *id.* at 1235 ("The NITU marks the 'finite start' to either temporary or permanent takings claims. . . ."). When a NITU expires, is revoked, or is otherwise extinguished, the government taking ends. *See Memmer v. United States*, 50 F.4th 136, 146 (Fed. Cir. 2022) ("We agree with the government that the taking ended upon expiration of the NITU on November 8, 2013. This is so because it was on that date that the United States was no longer responsible for mandating the continuation of the easement because, from that point forward, the decision rested solely in the hands of [the railroad]."); *see also Caldwell*, 391 F.3d at 1235 (noting that government may decide to abandon taking, which "results in an alteration in the property interest taken—from full ownership to one of temporary use and occupation"); *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 319 (1987) (holding that where government abandons taking, taking becomes temporary in nature).

This Court entered partial summary judgment finding that "the government is liable for a permanent taking of the property at issue as of the date of the NITU." Order at 1, ECF No. 38 (Aug. 19, 2021). Now that the STB has revoked the NITU that formed the basis of that partial summary judgment ruling, if the facts of the case otherwise support a determination of liability,[1]

---

[1] The Federal Circuit has held in the context of temporary takings that "in order to determine if a NITU has effected a taking, we must consider whether the railroad would have abandoned the line, i.e., relinquished its rights to the rail right-of-way, during the period of the NITU had there

any taking is temporary. *See Memmer*, 50 F.4th at 146; *see also Caldwell*, 391 F.3d at 1234.

Moreover, even if liability were established, the measure of just compensation is different for

permanent and temporary takings. Binding precedent holds that the proper measure of just

compensation for a temporary taking is the market rental value of the property for the period of

the taking. *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1580–81 (Fed. Cir. 1990). Just

compensation for a permanent taking is normally measured by the diminution of market value of

the property taken, or "what a willing buyer would pay to a willing seller for the property."

*United States v. 50 Acres of Land*, 469 U.S. 24, 29 & n.1 (1984); *Yuba Nat. Res., Inc. v. United*

*States*, 821 F.2d 638, 641 (Fed. Cir. 1987).

Currently, the parties' experts have not analyzed or offered opinions on the market rental

value of the respective properties. Because no opinions were offered on this issue, neither party

had an opportunity to question the other party's expert on any conclusions of market rental value.

These are threshold requirements for expert testimony at trial pursuant to RCFC 26(a)(2).

Without such expert testimony, even if the Court were to find the government liable for a

temporary taking, the Court would lack "sufficient reliable proof" as to the market rental value

"to independently determine a damages award" and would therefore have no basis to make any

award to Plaintiffs. *Gadsden Industrial Park, LLC v. United States*, 956 F.3d 1362, 1372 (Fed.

Cir. 2020) (affirming a trial court award of zero dollars where plaintiff failed to offer sufficient

evidence of market value).

Accordingly, the United States respectfully requests that the Court vacate its Order

scheduling trial in this action for January 22, 2024, including associated pre-trial deadlines

---

been no NITU." *Memmer*, 50 F.4th at 145 (citing *Caquelin v. United States*, 959 F.3d 1360, 1372
(Fed. 2020)).

(except for partial summary judgment briefing on outstanding title issues relating to the Lopez property). The United States notes that the Railroad (CSXT) has 60 days to exercise its discretionary authority to abandon the railroad corridor at issue. The Unites States proposes that the parties provide the Court a proposed schedule for further proceedings at the summary judgment argument on the Lopez-related title issues that is currently scheduled to take place on January 16, 2024.

Respectfully submitted this 16th day of November 2023,

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Frances B. Morris*
Frances B. Morris
Samantha G. Peltz
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel:  202-514-2855
Fax:  202-305-0506
E-Mail:  frances.morris@usdoj.gov

*Counsel for Defendant United States*